IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENETHA GUYER Adminstratrix of the Estate of JEFFREY C. MARKLE, deceased,<br><br>Plaintiff,<br><br>v.<br><br>MILTON NURSING AND REHABILITATION CENTER, L.P.; MILTON OPERATING, LLC d/b/a MILTON REHABILITATION AND NURSING CENTER; MILTON OPERATING LLC; MAPA OPERATING LLC; MAPA MANAGEMENT COMPANY, LLC; MIMA HEALTHCARE, LLC; and BEDROCK CARE, LLC<br><br>Defendants. | No. 4:20-CV-02381<br><br>(Chief Judge Brann) |

MEMORANDUM OPINION

NOVEMBER 3, 2021

I.      INTRODUCTION

In December 2020, Kenetha Guyer, the Adminstratrix of Jeffrey Markle's estate, sued Milton Nursing and Rehabilitation Center and its various affiliates in the Court of Common Pleas of Northumberland County—alleging that the facility's negligent COVID-19 response caused Markle's untimely death.

As Guyer's complaint details, blessed with good fortune and a rural location, Milton Nursing Home weathered the initial storm. From March until July 2020, no residents or staff tested positive for COVID-19.[1] But the situation deteriorated in August 2020 after several staff members returned positive results.[2] During this fateful month, the virus ravaged the facility. By the close of August, the 138-bed facility saw 109 residents and 57 staff members infected, resulting in 28 deaths—including Mr. Markle's.[3]

The outbreak prompted a state investigation. And the Pennsylvania Department of Health cataloged several failures: caregivers continued to work while symptomatic; Milton was (on a related note) understaffed; and the facility had neither provided personal protective equipment, nor established procedures to stem an outbreak.[4]

These findings are at the center of Guyer's suit—but they are not at issue today.[5] The question instead is whether this Court has jurisdiction to hear the case.

## II.    ISSUES BEFORE THE COURT

Guyer's complaint invokes only state law. But despite the well-pleaded complaint rule—which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"—

---

[1] Doc. 1-1 at 12, ¶¶ 35–36.
[2] *Id.* at 16, ¶ 69.
[3] *Id.*
[4] *Id.*
[5] *Id.* at 16–19, ¶¶ 70–87.

soon after Guyer filed, the Milton Nursing Home Defendants removed the case to federal court.[6] Guyer opposed the removal, moving to remand the case back to state court.[7]

And though Guyer moved to remand, it is the Milton Nursing Home Defendants that must show that this Court has jurisdiction: "a party who urges jurisdiction on a federal court bears the proving that jurisdiction exists . . . ."[8] What's more, this burden is exacting. "[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'"[9]

To meet this burden, the Milton Nursing Home Defendants provide two alternative federal-question jurisdiction theories. First, they argue that Guyer's suit was preempted by the Public Readiness and Emergency Preparedness Act (or PREP Act). Their theory? They say that this Act provides an exclusive federal remedy, which in turn creates federal question subject matter jurisdiction.[10] Second, they argue that they are entitled to a federal forum under the Federal Officer Removal Statute.[11]

---

[6] *Maglioli v. Alliance HC Holdings, LLC*, 2021 WL 4890189 (3d Cir. Oct. 20, 2021) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[7] 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

[8] *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

[9] *Id.* (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, F.2d 1006, 1010 (3d Cir. 1987).

[10] Doc. 6 at 3–11. *See generally* The Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 147d-6d, 247d-6e; 28 U.S.C. § 1331.

[11] Doc. 6 at 11–14. *See generally* 28 U.S.C. § 1442(a)(1).

## III. ANALYSIS

This case does not exist in a vacuum. COVID-19 has taken hundreds of thousands of American lives. And many of those that we have lost lived in nursing homes.

It should come as no surprise then that suits—which implicate the same issues raised by the parties here—have emerged in federal courts across the country.[12] Indeed, since the parties briefed the removal issue, the United States Court of Appeals for the Third Circuit decided *Maglioli v. Alliance HC Holdings*.[13] That decision—which considered the very legal arguments before the Court—dictates our result.

### A. The PREP Act Does Not Preempt Guyer's State Law Tort Claims

As the Third Circuit explained in *Maglioli*, raising federal preemption as a defense does not generally warrant removal because the federal issue doesn't appear on the face of the complaint.[14] But they noted an exception:

> a federal statute's preemptive force can be so great that we treat a displaced state-law claim as if it were a federal claim. So although a garden-variety preemption defense would not satisfy the well-pleaded-complaint rule, a completely preempted state-law claim does. Removal is proper only if the federal statute "wholly displaces the state-law cause of action through complete preemption." A statute is completely preemptive if it "provides the exclusive cause of action for the claim

---

[12]  *See Maglioli*, 2021 WL 4890189, at *3 n.2 (collecting cases).
[13]  2021 WL 4890189 (3d Cir. Oct. 20, 2021).
[14]  *Id.* at *6–7 (alteration and citations omitted).

asserted and also sets forth procedures and remedies governing that cause of action."[15]

So in *Maglioli*, the Third Circuit's task was to decide whether the PREP Act created an exclusive federal cause of action and, if so, whether the estates' allegations "f[e]ll within [the] scope of the exclusive federal cause of action."[16]

They concluded that the PREP Act created an exclusive federal cause of action—but only for willful misconduct.[17] And the estates' allegations didn't fall into this category.[18]

As the court noted, the case would have been removable had the plaintiffs alleged intentional, wrongful action. But "[t]he closest the estates come to a willful misconduct allegation [is in] their request for punitive damages."[19] And the Third Circuit found that the plaintiffs "fleeting" claim that "the nursing homes engaged in 'conduct that was grossly reckless, willful, and wanton'" fell short.[20] Removal on complete preemption grounds was therefore unwarranted.

The same analysis is required here. And the result is the same. Guyer's complaint similarly lacks allegations that the Milton Nursing Home Defendants "acted with intent 'to achieve a wrongful purpose,' or with knowledge that their acts

---

[15] *Id.* at *7 (citing *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 354 (3d Cir. 1995) & *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)) (internal citations omitted).
[16] *Id.*
[17] *Id.* at *8–9.
[18] *Id.* at *9–12.
[19] *Id.* at *10.
[20] *Id.*

lacked 'legal or factual justification.'"[21] Like the plaintiffs in *Maglioli*, Guyer's references to "willful conduct" reflect "standard language for a punitive damages request."[22] At best, the Milton Nursing Home Defendants could point to allegations that the "Defendants have made the conscious decision not to provide sufficient staffing, training, equipment and resources to preserve the health and safety of residents and staff, although the devastating consequences of their decision were not realized until this pandemic."[23] But these allegations still don't involve intentionally wrongful conduct.

Guyer has alleged negligence—and, in doing so, has avoided removal-triggering preemption under the PREP Act.

### B. The Milton Nursing Home Defendants Do Not Meet The Requirements for Federal Officer Removal

In *Maglioli*, the Third Circuit also rejected Guyer's second argument, that removal is warranted under the federal officer removal statute.[24] As the court explained, to be eligible for removal under 28 U.S.C. § 1442(a)(1):

> a defendant must meet four requirements: (1) the defendant must be a "person" within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant must be "for or relating to" an act under the color of federal office; and (4) the defendant must raise a colorable federal defense to the plaintiff's claims.[25]

---

[21]   *See id.*
[22]   *See id.*
[23]   Doc. 1-1 at 11, ¶ 33.
[24]   *See Maglioli*, 2021 WL 4890189, at *5–6.
[25]   *Id.* at *5 (quoting 28 U.S.C. § 1442(a)(1)).

Removal was improper in *Maglioli,* because "the nursing homes were not 'acting under' the United States, its agencies, or its officers."[26] In reaching this conclusion, the court considered the nursing home defendants' argument that Centers for Medicare and Medicaid Services (CMS) and Centers for Disease Control and Prevention (CDC) COVID-19 publications were directives.[27] The nursing homes reasoned that, by following these "directives," they were "assist[ing] or help[ing] carry out the duties of a federal superior."[28] And that in turn would entitle them to federal officer removal.[29]

The Third Circuit found two faults with this argument. For one, the CMS and CDC publications lacked bite. The court noted that these "'comprehensive directives' . . . are more aptly described as guidance."[30] And though this failing was enough, the court then highlighted this supposed evidence-of-intense-regulation's more basic failing: "[e]ven assuming the nursing homes are subject to intense regulation, that alone did not mean they were 'acting under' federal officers."[31] Something more was required.[32]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at *6.
[32] *Id.*

Similar flaws are at play here. The Milton Nursing Home Defendants also allege that they were "acting under a federal officer" because they:

> follow[ed] detailed and evolving comprehensive guidelines from CMS and the CDC concerning virtually every aspect of the facility's operations: 1) infection control policies and procedures; 2) PPE procurement; 3) PPE allocation; 4) admission and discharge of residents; 5) managing visitors and outside persons; 6) staffing allocation and retention; 7) isolation protocols and management, among other directives.[33]

In sum, their argument rests on CMS and CDC directives. And under *Maglioli*, government guidance won't do. As a result, the Milton Nursing Home Defendants cannot avoid remand under the federal officer removal statute either.

## IV. CONCLUSION

The Third Circuit's decision in *Maglioli* determines our result. Guyer filed her claim in state court and asserted only state law claims. The Defendants were not "acting under a federal officer." Nor do Guyer's claims come within the removal-triggering exclusive jurisdiction of the PREP Act. So state court is where her suit belongs.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[33] Doc. 6 at 12.